**James A. DUNN, Plaintiff,**

v.

**NEW JERSEY TRANSIT CORPORATION; New Jersey Transit Rail Operations, Inc.; Elbur H. Richards; William B. Wagner and Richard J. Buckreis, Defendants.**

**Civ. A. No. 86–3312.**

United States District Court,
D. New Jersey.

Nov. 13, 1987.

Kenney & Kenney by Robert J. Santaloci, Red Bank, N.J. and Thomas M. McCarthy, Rumson, N.J. for plaintiff.

W. Cary Edwards, Atty. Gen. by Jeffrey Burstein, Deputy Atty. Gen., Div. of Law, Public Transp. Section, Newark, N.J., for defendants.

## OPINION

BISSELL, District Judge.

This matter arises out of a Complaint filed on August 20, 1986 by James A. Dunn against New Jersey Transit Corp. ("NJTC"), and its subsidiary, New Jersey Transit Rail Operations, Inc. ("NJTROI"), and three employees of NJTROI, Elbur A. Richards, William B. Wagner, and Richard J. Buckreis. Plaintiff, a former sergeant of the New Jersey Transit Police, complains that his termination and a conspiracy to terminate him without due process violated 42 U.S.C. §§ 1983 and 1985. He seeks an order of reinstatement, compensatory and punitive damages, attorneys fees and costs of suit.

All defendants move to dismiss or for summary judgment on several grounds: (1) that plaintiff's exclusive remedy is under the Railway Labor Act; (2) that all defendants are immune from suit in federal court under the Eleventh Amendment; and (3) that the Complaint fails to state claims under 42 U.S.C. §§ 1983 and 1985. Because items outside the Complaint itself have been submitted by both sides, the motion is addressed as one for summary judgment. Fed.R.Civ.P. 12(b).

A brief review of the facts is necessary. Plaintiff was employed by NJTROI as a sergeant of the NJTROI Police Department from January 1, 1983 until his termination on February 6, 1986. In April 1985, plaintiff was charged with insubordination for disobeying orders of defendant Elbur H. Richards, plaintiff's supervisor, and Joseph Slawsky, Director of New Jersey Transit Police. (Baker Aff. at ¶ 2). During his employment, plaintiff was represented by and was an officer of Local 304 of the Patrolmen's Benevolent Association ("PBA"). Consistent with the grievance procedures provided in an unratified collective bargaining agreement between the union and NJTROI, NJTROI held hearings on the two insubordination charges in October

1985 and January and March of 1986. *Id.* at ¶¶ 3, 4. The hearings were conducted by defendant William B. Wagner, then a full-time hearing examiner employed by NJTROI. At the conclusion of the hearings, Mr. Wagner recommended that Mr. Dunn be discharged for both incidents of insubordination. This recommendation was affirmed by Frank Flynn, the NJTROI Assistant Vice–President, resulting in the discharge of plaintiff. *Id.* at ¶ 4. Through the PBA, plaintiff appealed Mr. Flynn's decision to James Baker, the Director of Labor Relations of NJTROI, who sustained Mr. Flynn's decision in connection with both incidents of insubordination in March and May of 1986. *Id.* at ¶ 5.

In his Complaint, plaintiff alleges that defendants deprived him of his liberty and property interests without due process of law. (Complaint at ¶ 13.). His property interest, *i.e.* the right not to be discharged "without just cause and without a fair and impartial trial", allegedly derives from the collective bargaining agreement between NJTROI and the PBA. *Id.* at ¶ 8. The specific source of plaintiff's asserted liberty interest is nowhere alleged in the Complaint. The alleged denial of procedural due process is explained as follows:

> On October 3, 1985, and January 21 and 24 and March 18, 1986, defendant Wagner conducted hearings on said charges at which defendants Buckreis and Richards, among others, testified.
>
> During said hearings, defendant Wagner acted as both prosecuting and hearing officer, denied plaintiff discovery, and denied him the opportunity to cross-examine hostile witnesses.

(Complaint at ¶¶ 11, 12).

The allegation supporting plaintiff's claim under 42 U.S.C. § 1985 is that "[b]efore and during the events herein described [in the Complaint], all individual defendants, covertly and overtly conspired to deprive plaintiff of these rights." *Id.* at ¶ 14.

The first two grounds for dismissal presented by defendant: the exclusiveness of plaintiff's remedy under the Railway Labor Act and the defendant's sovereign immunity, question this Court's subject matter jurisdiction and thus must be addressed before the Court can adjudicate plaintiff's claims on the merits.

Both sides agree that the usual discharge case is a "minor dispute" as defined by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, and, therefore, a discharged rail employee complaining that his termination violated the collective bargaining agreement must seek redress from the National Railroad Adjustment Board ("the Board" or "the NRAB") to the exclusion of the federal courts. *Andrews v. Louisville & Nashville Railroad Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). However, plaintiff asserts that the exclusivity of the RLA remedies depends upon the existence of an enforceable collective bargaining agreement. Even though he bases his property rights in his Complaint on his right under the collective bargaining agreement to be discharged only for just cause, plaintiff now maintains that the collective bargaining agreement was not an effective contract because it was unratified, therefore, the exclusive RLA procedures are not applicable.

If no contract existed between the NJTROI and the PBA, the Court would find that plaintiff had no property right of which he was deprived. Contrary to plaintiff's assertion, based on an erroneous interpretation of Judge Fisher's opinion in *Port Authority Police Benevolent Ass'n, Inc. v. Port Authority of New York and New Jersey*, Civil No. 85–1477 (D.N.J. December 19, 1985), he did not have a property interest in his job merely because he was a public employee. *See Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914, 916 (7th Cir.1974) ("In the absence of a statute or an agreement, an employer may discharge his employee for cause or without cause, and the Act (*i.e.*, the RLA) does not limit the employer's right to discharge to instances involving cause."); *Nicoletta v. North Jersey Dist. Water Supply Comm'n*, 77 N.J. 145, 150, 390 A.2d 90 (1978) ("Under the common law, the employer, even though a public employer, has the right to discharge such employee (not

hired for a fixed term or protected by any statutory tenure such as under the New Jersey Civil Service Rules, contractual commitment or a collective bargaining agreement) with or without cause.") Defendants point out that the New Jersey Civil Service Rules do not apply to NJTROI employees. (Defendants' Reply Brief at 3 n. 2).

Additionally, under the authority of *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572–74, 92 S.Ct. 2701, 2706–08, 33 L.Ed.2d 548 (1972) and *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976), plaintiff has no liberty interest of which he was allegedly deprived because he does not allege that his discharge resulted in damage to his reputation or the foreclosure of opportunities for future employment.

However, the Court cannot find the RLA inapplicable and dismiss plaintiff's Complaint for lack of property and liberty interests because defendants maintain that the unratified collective bargaining agreement constituted a valid contract. They assert that a contract by performance existed because "[b]oth NJTRO and the PBA followed procedures for resolution of grievances and appeals of disciplinary procedures which were contained in the unratified agreement, including the clause which provides that no employee dismissal shall occur 'without just cause and without a fair and impartial hearing.'" (Baker Aff. at ¶ 3).

In essence, defendants' argument is that the collective bargaining agreement was valid to force plaintiff to utilize the exclusive remedies provided under the RLA and that no exceptions exist to the requirement that plaintiff have presented his appeal to the NRAB.

In response, Mr. Dunn asserts that he was not required to appeal to the NRAB because it would have been a futile gesture. *See Masy v. New Jersey Transit Rail Operations, Inc.*, 790 F.2d 322, 326 (3d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 320, 93 L.Ed.2d 293 (1986) ("The second exception to the NRAB's administrative procedures arises when resort to the NRAB would be futile.") Plaintiff contends that the futility exception applies because in one decision dated September 18, 1986 and two dated February 19, 1987, the Board dismissed the claim of Local 304, representing discharged employees, for lack of jurisdiction because the collective bargaining agreement between NJTROI and PBA was unratified at the time of the dispute. Award No. 4478, Docket No. 4504; Award No. 4508, Docket No. 4525; Award No. 4510, Docket No. 4476.

Mr. Dunn has not shown that resort to the Board would have been futile as of August 20, 1986, the date he filed his federal Complaint, because the earliest decision indicating that the Board declined jurisdiction is dated September 18, 1986. However, the Court believes that plaintiff's claim would be dismissed by the Board for lack of jurisdiction should he return there now. Defendants' assertion that the Board is unlikely to address its lack of jurisdiction unless the issue is brought to its attention is unconvincing since the Board could question its jurisdiction *sua sponte.*

In sum, the Court would dismiss the Complaint if no valid contract between the PBA and NJTROI existed but would not dismiss for failure of plaintiff to apply to the Board if an enforceable contract protecting those parties does exist. Based on the record before it, the Court cannot determine whether the parties are bound by contract. Although defendants believe that the parties' actions show ratification through performance, in Award No. 4508, the PBA stated that its submission of the dispute to the Board "should not be construed as acceptance of the Board's authority in this matter, or acceptance of the unratified agreement." Award No. 4508, Docket No. 4525 at 3.

Thus, the Court decides defendants' motion on the basis of their Eleventh Amendment arguments. "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. (Cites omitted). This jurisdictional bar applies regardless of the nature of the relief

sought." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). It is not necessary that the state be named as a party, but only that the named party be the alter ego of the state. *Blake v. Kline,* 612 F.2d 718, 721 (3d Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980).

■ Thus, a suit against state officials is also barred regardless of the type of relief sought where the state is the real party in interest. *Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909. The one exception to this general rule is that a suit challenging the constitutionality of a state official's action is not one against the state. *Id., citing Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The rule of *Ex parte Young* was narrowed in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), *reh'g denied,* 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974), where the Court held "that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief." *Pennhurst,* 465 U.S. at 102–03, 104 S.Ct. at 909. That is, if the plaintiff's recovery must be paid from public funds in the state treasury, it is barred by the Eleventh Amendment. *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1355.

■ Applying the above principles and this District Court's prior decisions treating the same issue, the Court holds that defendants NJTC and NJTROI are alter egos of the State of New Jersey and are therefore entirely immune from suit in this court. *See Hightower v. New Jersey Transit Rail Operations, Inc.,* Civil No. 84–1268 (D.N.J. Aug. 27, 1984) (Ackerman, J.); *Saddle River Tours, Ltd. v. New Jersey Dep't of Transportation,* Civil No. 83–1776 (D.N.J. Oct. 31, 1983) (Debevoise, J.), *aff'd mem.,* 745 F.2d 48 (3d Cir.1984); *Gibson–Homans Co. v. New Jersey Transit Corp.,* 560 F.Supp. 110 (D.N.J.1982) (Stern, J.).

The Court rejects plaintiff's insinuation that "[b]y entering into the operation of an interstate railroad, a State subjects itself to suit in Federal Court (Plaintiff's Brief at 9) for any and all purposes. Mr. Dunn's reliance upon the cases of *Brotherhood of Locomotive Engineers v. New Jersey Transit Rail Operations, Inc.,* 608 F.Supp. 1216 (S.D.N.Y.1985), *reconsideration denied,* 618 F.Supp. 1456 (S.D.N.Y.), and *Parden v. Terminal Ry. of Alabama State Docks Dep't.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), *reh'g denied,* 377 U.S. 1010, 84 S.Ct. 1903, 12 L.Ed.2d 1057 (1964), is misplaced. The *Brotherhood* case involved NJTROI's immunity from a suit brought under the RLA whereas the *Parden* case involved the immunity of an Alabama state-owned railway from suit brought under the Federal Employers' Liability Act. Plaintiff Dunn's suit, which asserts violations of §§ 1983 and 1985, is controlled by the Supreme Court's decision in *Quern v. Jordan,* 440 U.S. 332, 340–45, 99 S.Ct. 1139, 1144–47, 59 L.Ed.2d 358 (1979) wherein the Court held that Congress did not intend to override the traditional sovereign immunity of the States in enacting the 1871 Civil Rights Act of which §§ 1983 and 1985 are a part. The State of New Jersey has not consented to be sued in federal court for violations of §§ 1983 and 1985 merely by allowing the NJTC and NJTROI to continue to operate.

In accordance with the foregoing, the Court concludes that the motion of NJTC and NJTROI to dismiss must be granted.

■ The remaining individual defendants, Richards, Wagner and Buckreis, are immune from suit to the extent that compensatory damages sought by plaintiff will be paid out of the state treasury. Under N.J.S.A. 59:10–1 and 59:10A–1, these defendants are entitled to indemnification for compensatory damages for acts and/or omissions committed in the scope of their employment. Mr. Dunn bases his § 1983 claim solely on actions taken by the individual defendants in their official capacity. As mentioned above, paragraphs 11 and 12 of the Complaint, which support plaintiff's § 1983 claim, allege only that defendants Buckreis and Richards testified at the hearings and that defendant Wagner denied plaintiff a fair hearing in his capacity as

the prosecuting and hearing officer. If found liable on these charges, the individual defendants would be entitled to indemnification from the State of New Jersey. Therefore, plaintiff's § 1983 claim does not overcome the Eleventh Amendment bar against judgments which must be paid out of the state treasury. The Court so holds despite the averments in the Dunn, Seeney, McColgan, McQuestion and Osterweil Affidavits submitted by plaintiff. *See Miller v. Rutgers,* 619 F.Supp. 1386, 1392–93 (D.N.J. 1985) (court rejected plaintiff's argument that summary judgment in favor of individual defendant officers was prevented by factual questions concerning whether defendants were acting in their official capacity because the complaint failed to allege actions taken by defendants in their individual capacity).

■ Defendants admit that unconstitutional acts involving malice or willful misconduct are not within the scope of employment. (Defendants' Reply Brief at 13). This brings the Court to plaintiff's claim for compensatory and punitive damages for violations of § 1985. Although plaintiff's § 1985 claim of a conspiracy to deprive him of his right to procedural due process alleges action taken by defendants in their individual capacity, this claim also is unsupportable. Mr. Dunn does not specify which subpart of § 1985 has been violated. However, under the facts at hand, only § 1985(3) could be applicable. Plaintiff's Complaint fails to state a claim under § 1985(3) for two reasons. First, § 1985(3) does not provide a remedy for a conspiracy to deny the right to due process, as opposed to the right to equal protection under the law. *Dunn v. Gazzola,* 216 F.2d 709, 711 (1st Cir.1954); *Whittington v. Johnston,* 201 F.2d 810, 811 (5th Cir.1953), *cert. denied,* 346 U.S. 867, 74 S.Ct. 103, 98 L.Ed. 377 (1953); *Chambers v. Omaha Girls Club,* 629 F.Supp. 925, 938 n. 22 (D.Neb. 1986); *Oaks v. City of Fairhope,* 515 F.Supp. 1004, 1045 (S.D.Ala.1981); *Rodriguez v. Carroll,* 510 F.Supp. 547, 552 (S.D. Tex.1981); *Perrotta v. Irizarry,* 430 F.Supp. 1274, 1278 (S.D.N.Y.1977), *aff'd mem.,* 573 F.2d 1294 (2d Cir.1977).

■ Secondly, plaintiff asserts that the defendants' alleged conspiracy was motivated "by an anti-union bias or at the very least, a resentment of Mr. Dunn because of his union activities." (Plaintiff's Brief at 14). The Supreme Court has held that an anti-union bias is not the type of class-based invidiously discriminatory animus which will trigger § 1985(3). *United Brotherhood of Carpenters and Joiners of America v. Scott,* 463 U.S. 825, 838–39, 103 S.Ct. 3352, 3361, 77 L.Ed.2d 1049 (1983), *reh'g denied,* 464 U.S. 875, 104 S.Ct. 211, 78 L.Ed.2d 186 (1983).

Finally, the only other relief sought in the Complaint, the request for the equitable remedy of reinstatement, although not barred under the law, is barred by the realities of the situation. This type of relief is unavailable from the individual defendants because none has the authority to reinstate plaintiff to his former job. The Court notes that at oral argument plaintiff's counsel acknowledged that he had no viable claim under 42 U.S.C. § 1985. (Defendants' Reply Brief at 13).

In conclusion, the Court holds that all defendants are barred from suit in federal court under the Eleventh Amendment of the United States Constitution, and that no claims may be maintained against the individual defendants under 42 U.S.C. § 1985(3). A copy of an Order dismissing the case in its entirety is enclosed.

### ORDER

For the reasons set forth in the Court's Opinion filed herewith,

It is on this 13th day of November, 1987,

ORDERED that the Complaint herein be, and the same hereby is, dismissed in its entirety, without costs.