**Peter DEFEO and Westtown Sewer Company**

v.

**Pierson SILL, et al.**

**Civ. A. No. 92–0935.**

United States District Court, E.D. Pennsylvania.

Jan. 14, 1993.

Robert J. Sugarman, Philadelphia, PA, for plaintiffs.

Jane M. Shields, Exton, PA, Sandra W. Stoner, Office of Atty. Gen., Harrisburg, PA, for defendants.

MEMORANDUM

WALDMAN, District Judge.

## I. INTRODUCTION

Plaintiffs are a sewage treatment facility and its individual owner. They allege that the township of Westtown, Chester County

and members of its Board of Supervisors ("township defendants"), the Pennsylvania Department of Environmental Resources ("DER") and the manager of its Southeastern Pennsylvania water quality program deprived them of a variety of constitutional rights and conspired to do so. They assert claims under 42 U.S.C. § 1981–83, as well as pendent state-law claims.

Presently before the court is plaintiffs' Motion for Leave to File a Second Amended Complaint and defendants' Motions to Dismiss Plaintiffs' Amended Complaint.[1]

## II. LEGAL STANDARDS

A party may amend its pleading once as a matter of course and otherwise only by leave of court that "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 613 (3d Cir.1987). A court may deny leave to amend when the proposed amendment would be futile, that is it would not cure the asserted defect. *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir.1988) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). In this case, the filing of an amended complaint would be futile if it could not withstand a Rule 12(b)(6) motion.

In deciding a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), the court must "accept as true all the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party." *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). Dismissal is not appropriate unless it clearly appears that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Robb v. Philadelphia*, 733 F.2d 286, 290 (3d Cir.

1984). A complaint may be dismissed when the facts pled and the reasonable inferences derived therefrom are legally insufficient to support the relief sought. *See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 179 (3d Cir.1988). Civil rights claims must be set forth with specificity. *Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir.1981); *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922 (3d Cir.1976).

## III. FACTS

The factual allegations construed most favorably to plaintiffs are as follow. Plaintiff DeFeo has owned and operated the Westtown Sewer Company since 1965. The company operates a sewage collection, treatment and disposal facility utilizing property "some of which" is owned by Mr. DeFeo. Plaintiff sewer company operates pursuant to a public utility franchise from the Pennsylvania Public Utilities Commission ("PUC") and is subject to regulation by the DER.

Defendant Feola is the manager of the DER water quality program for Southeastern Pennsylvania and has responsibility for overseeing sewage collection, treatment and disposal plants, and local planning for sewage service. Defendants Sill and Scipione are members of the Board of Supervisors of Westtown, the township in which plaintiff sewer company is located. The individual defendants are being sued for actions allegedly undertaken in their official capacities.

Plaintiffs allege that defendants collaboratively adopted and implemented policies which encourage townships to assume control of privately owned sewage facilities such as plaintiff DeFeo's, in part as an alternative to building new public facilities. In so doing, the township defendants allegedly used or misused their governmental powers to undermine the ability of the sewer company to operate profitably and to acquire plaintiffs' property without adequate compensation.

---

1. After the filing of the complaint, the township defendants filed a motion to dismiss. Plaintiffs then filed an Amended Complaint, as of right, pursuant to Fed.R.Civ.P. 15(a). All defendants then filed motions to dismiss the Amended Complaint. In response, plaintiffs filed the present motion, seeking leave to file a Second Amended Complaint.

Defendant supervisors allegedly refused to process applications for new connections to plaintiffs' system; discouraged property owners from utilizing plaintiffs' services; frustrated attempts by plaintiff company to increase its authorized capacity; disparaged individual plaintiff's reputation and creditworthiness; caused the Township to deny building permits to property owners who proposed to connect their sewers to plaintiffs' facility; caused the DER to deny to plaintiffs approval to upgrade and expand their facility; discouraged the PUC from approving an expansion of plaintiffs' service area. Defendant Feola allegedly collaborated with the township defendants in the making of unfounded allegations of regulatory violations against plaintiffs and the frustration of their efforts to obtain DER approval to expand their capacity and service new customers. He also allegedly threatened plaintiff DeFeo with the imposition of large fines if he continued to resist implementation of defendants' sewage disposal plan.

Plaintiffs assert that they have "exhausted" their administrative remedies and that a DER administrative law judge and Environmental Hearing Board refused to hear their constitutional claims.[2]

Some of these allegations may be actionable. They do not, however, appear to support the federal causes of action asserted by plaintiffs in their third confusing and inartful attempt to plead. Any federal claim which may be cognizable is still difficult to discern in counts that are both multiplicitous and duplicitous and in language that is ambiguous and conclusory. The frustration expressed by defendants in this regard is not unjustified but, contrary to their contention, does not constitute the type of prejudice to them which alone might warrant dismissal without leave further to amend. *See Adams v. Gould, Inc.,* 739 F.2d 858, 864 (3d Cir.1984), *cert. denied,* 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985).

## IV. DISCUSSION

In Count I plaintiffs assert that defendants deprived them of property including real estate, their public utility franchise, business good will and reputation and the right to operate a business. Although not stated, the court assumes that plaintiffs meant to claim that this happened without due process or in a manner that was otherwise unlawful. Plaintiffs also assert in Count I that defendants denied them equal protection of the laws, and deprived plaintiff DeFeo of the right to hold property in violation of the privileges and immunities clause of Article IV, Section 1 of the Constitution.

In Count II plaintiffs assert that they were denied property without due process in violation of the Fifth and Fourteenth Amendments. The court assumes from the use of the language "without appropriate procedures" that plaintiffs are claiming a denial of procedural due process. Plaintiffs further allege in Count II that they were pressured by defendants to give up property without just compensation. The court assumes that plaintiffs mean thereby to assert a claim under the takings clause of the Fifth Amendment.

In Count III plaintiffs assert that they were deprived by defendants of property without due process of law, in violation of the Pennsylvania Constitution.

In Count IV plaintiffs assert that defendants interfered with plaintiffs' contracts with third parties.

In Count V plaintiffs assert that defendants conspired to deprive them of property, presumably without due process or in some unlawful manner, and of other unspecified rights guaranteed by federal and state law.

### A. *Eleventh Amendment*

 Defendant Feola contends that plaintiffs claims against him are barred by

---

**2.** It is difficult to determine whether plaintiffs misperceive some need to exhaust state remedies before asserting a substantive § 1983 claim, *see Patsy v. Board of Regents of State of Fla.,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982), or fail to perceive the procedural right provided by Pennsylvania to challenge the constitutionality of actions of state agencies through appellate court review. *See* 2 Pa.Con. Stat. §§ 702, 704.

the Eleventh Amendment.[3] A suit against a state official in his official capacity is a suit against the state. *See Hafer v. Melo,* — U.S. —, —, 112 S.Ct. 358, 359, 116 L.Ed.2d 301 (1991); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989); *Chrissy F. v. Mississippi Dep't of Public Welfare,* 925 F.2d 844, 849 (5th Cir.1991).

 The Eleventh Amendment bar extends to the DER, as a department of the state, and its agents. *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir.1981). Thus, claims for monetary relief against state officials such as plaintiffs assert against defendant Feola are barred by the Eleventh Amendment. *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991); *Dunn v. New Jersey Transit Corp.,* 681 F.Supp. 246, 250–51 (D.N.J.1987).

 Plaintiffs also seek prospective injunctive relief against defendants on federal and pendent state-law grounds. Pendent claims against state actors in federal courts for violations of *state* law are barred by the Eleventh Amendment. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984). Federal constitutional claims for prospective injunctive relief against state officials are not barred. *Edelman v. Jordan,* 415 U.S. 651, 676–77, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974).

### B. *Abstention*

Defendant Feola contends that the court should abstain from deciding any cognizable claims because of ongoing state proceedings.

 "The doctrine of abstention ... is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (quoting

*County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188, 79 S.Ct. 1060, 1062, 3 L.Ed.2d 1163 (1959)). "Abstention rarely should be invoked." *Ankenbrandt v. Richards,* — U.S. —, —, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992). In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court articulated the principle that federal courts should refrain from interfering with ongoing state criminal proceedings. This principle has been extended to ongoing civil and administrative proceedings. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (civil proceedings); *Ohio Civil Rights Comm'n v. Dayton Christian Schools,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (administrative proceedings).

The district courts may abstain only when:

(1) there are ongoing state proceedings that are judicial in nature;

(2) the state proceedings implicate important state interests; and,

(3) the state proceedings afford an adequate opportunity to raise the federal claims.

*Gwynedd Properties, Inc. v. Lower Gwynedd Township,* 970 F.2d 1195, 1200 (3d Cir.1992) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982) and *Schall v. Joyce,* 885 F.2d 101, 106 (3d Cir.1989)). *See also Ohio Civil Rights Comm'n,* 477 U.S. at 627, 106 S.Ct. at 2723 (*Younger* principles implicated with ongoing state administrative proceedings "in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim"). Courts also may decline to abstain upon a showing of "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex,* 457 U.S. at 435, 102 S.Ct. at 2523.

---

3. Plaintiffs have dropped the DER as a defendant in their proposed Second Amended Complaint. Eleventh Amendment protection does not extend to municipalities. *See Mt. Healthy*

*City School District Bd. of Ed. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *Lincoln County v. Luning,* 133 U.S. 529, 530, 10 S.Ct. 363, 363, 33 L.Ed. 766 (1890).

It appears from plaintiffs' proposed Second Amended Complaint that some administrative proceeding took place before the Environmental Hearing Board in February of 1992 regarding hydraulic conditions at plaintiffs' facility. There has been no showing by defendant Feola, however, of the nature, scope or current posture of that proceeding or of the existence of any other pertinent pending proceeding.

### C. Civil Rights Claims

■ To sustain a section 1983 claim,[4] a plaintiff must demonstrate that a defendant acting under color of state law deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Shaw v. Strackhouse,* 920 F.2d 1135, 1142 (3d Cir. 1990).[5]

■ A claim against a municipality may be premised on an official policy, practice or custom resulting in the denial of civil rights. *Monell v. Department of Social Serv. of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). A decision by municipal officials may constitute a "policy" if they had final authority to take action regarding the particular subject matter and deliberately chose, in the face of available alternatives, to do so. *Pembaur v. Cincinnati,* 475 U.S. 469, 481–84, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452 (1986); *Bello v. Walker,* 840 F.2d 1124, 1129–30 n. 4 (3d Cir.), *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102

L.Ed.2d 145 (1988). In their proposed Second Amended Complaint, plaintiffs allege facts from which one reasonably might infer that the actions of defendant supervisors satisfy the *Pembaur* criteria.

### 1. Privileges and Immunities

■ The purposes of the privileges and immunities clause of Article IV, Section 1, the only provision cited by plaintiffs, is to ensure that rights granted by a state to its citizens are not withheld from citizens of sister states. *Lutz v. City of York, Pa.,* 899 F.2d 255, 262 (3d Cir.1990). There is no allegation that Mr. DeFeo was discriminated against because of his citizenship. Indeed, he alleges that he is a citizen of Pennsylvania.[6]

### 2. Equal Protection

■ The essence of the Equal Protection Clause of the Fourteenth Amendment is a requirement that absent a rational basis for doing otherwise, the state must treat similarly situated persons alike. *See Nordlinger v. Hahn,* — U.S. —, —, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992); *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Mahone v. Addicks Utility Dist. of Harris County,* 836 F.2d 921, 932 (5th Cir.1988); *Epstein v. Township of Whitehall,* 693 F.Supp. 309, 314 (E.D.Pa.1988). *See also Fiore v. Kelly Run Sanitation, Inc.,* 609 F.Supp. 909, 913 (W.D.Pa.1985).

---

**4.** Plaintiffs seek relief under 42 U.S.C. § 1981–83. Sections 1981 and 1982 concern racial discrimination. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 171–72, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989) (§ 1981 prohibits racial discrimination); *City of Memphis v. N.T. Greene,* 451 U.S. 100, 120, 101 S.Ct. 1584, 1596, 67 L.Ed.2d 769 (1981) (§ 1982 protects property rights of non-whites). Plaintiffs have not alleged that racial considerations in any way motivated defendants' conduct in the circumstances complained of.

**5.** The township defendants contend that plaintiff DeFeo lacks standing to pursue any of his claims. In the absence of a direct individual injury, a corporate shareholder or officer lacks standing to sue for an injury to the corporation. *See Flynn v. Merrick,* 881 F.2d 446, 450 (7th Cir.1989); *Warren v. Manufacturers Nat'l. Bank*

*of Detroit,* 759 F.2d 542, 544 (6th Cir.1985). This applies with equal force to sole shareholders. *See Jones v. Niagara Frontier Transportation Authority,* 836 F.2d 731, 736 (2d Cir.1987); *American Airways Charters, Inc. v. Regan,* 746 F.2d 865, 873 (D.C.Cir.1984); *Sherman v. British Leyland Motors, Ltd.,* 601 F.2d 429, 439–40 (9th Cir.1979). There is nothing of record, however, from which the court can determine whether Westtown Sewer is incorporated or merely a trade name for a sole proprietorship. Moreover, plaintiff DeFeo alleges that he holds title to at least some of the property allegedly taken.

**6.** The privileges and immunities clause of the Fourteenth Amendment protects those rights which are attributes of national citizenship or are implicit in the concept of national citizenship. *Lutz,* 899 F.2d at 263–64. Plaintiffs' allegations implicate no such rights.

Plaintiffs allege no facts from which one could find that they were treated less favorably by defendants than other private sewage service providers in their jurisdiction, or that someone else seeking to maintain and expand a private sewage system in Westtown Township would be treated any more favorably. Indeed, plaintiffs allege that defendants are acting pursuant to a policy generally directed at "local communities and their privately owned sewage companies."

### 3. Due Process

The Fourteenth Amendment protects against deprivation of life, liberty or property without due process of law.[7] When such interests are implicated, due process requires notice and an opportunity for a hearing, the nature and timing of which may depend on the particular circumstances and interests affected. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Where property rights are involved, due process requires that one be afforded an opportunity for a hearing at some time before he is permanently deprived of his property. *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 612, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974). Property interests accorded protection under the Fourteenth Amendment are defined by independent sources such as state law. *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

It appears from the face of plaintiffs' various complaints, including the proposed Second Amended Complaint, that they have not in fact been deprived of property. They still have their business. They still have the land on which it is situated. They still have a public utility franchise. Indeed, they allege that defendants "sought" and "are seeking" to deprive them of such property interests "by 1995 or 1996".[8] Plaintiffs also allege that defendants injured their reputation and good will by intentionally misrepresenting to others plaintiffs' financial condition and creditworthiness. They do not allege that as a proximate result of such statements anyone actually withheld credit from or refused to do business with plaintiffs.

Unless coupled with a tangible injury such as the loss of employment or extinction of a vested right recognized by state law, defamation by state officials is not actionable under § 1983. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Plaintiffs fail to allege facts in their proposed Second Amended Complaint which satisfy the "stigma plus" test of *Paul*. *See, e.g., Neu v. Corcoran*, 869 F.2d 662, 669 (2d Cir. 1989) (defamatory statements resulting in inability to engage in chosen business insufficient); *Sturm v. Clark*, 835 F.2d 1009, 1013 (3d Cir.1987) (defamatory statement resulting in loss of business clients and

---

**7.** Plaintiffs also assert a due process claim under the Fifth Amendment. The due process clause of the Fifth Amendment does not limit actions of state officials. *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Brock v. North Carolina*, 344 U.S. 424, 73 S.Ct. 349, 97 L.Ed. 456 (1953).

**8.** That defendants may have denied plaintiffs applications to modify or expand their sewage facility, even for reasons insufficient under pertinent state laws and regulations, would not constitute a due process violation. *See Pace Resources, Inc. v. Shrewsbury Tp.*, 808 F.2d 1023, 1036 (3d Cir.), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987); *Dean Tarry Corp. v. Friedlander*, 650 F.Supp. 1544, 1551 (S.D.N.Y.1987). Where such action is taken capriciously and is not based upon rational municipal planning considerations, it may violate substantive due process rights. *Id.* at 1035. *See also Bello*, 840 F.2d at 1228-30; *Rogin v. Bensalem Tp.*, 616 F.2d 680, 689 (3d Cir.1980), *cert. denied* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). A policy to centralize in phases sewage disposal in public authorities would not be irrational or unrelated to a legitimate governmental interest. Plaintiffs acknowledge that defendants have "the authority and responsibility to take a major role in the planning of future sewage collection and treatment." *See* 35 Pa.S.A. § 750.1 *et seq.* That plaintiffs are frustrated by the adoption of such a policy or so-called Act 537 Plan does not give rise to a constitutional claim. Deliberate abuse of governmental authority to implement even a legitimate policy, however, may implicate substantive due process rights.

income insufficient); *Mosrie v. Barry*, 718 F.2d 1151, 1158 (D.C.Cir.1983) (economic injury to business interests insufficient); *Havas v. Thornton*, 609 F.2d 372, 375 (9th Cir.1979) (statements impugning business practices pursuant to conspiracy to drive plaintiff out of business insufficient); *Dower v. Dickinson*, 700 F.Supp. 640, 647 (N.D.N.Y.1988) (defamatory statements by township supervisor interfering with plaintiff's business opportunities insufficient). Also, *Paul* and its progeny suggest that the injury transcending reputation must be directly caused by the state and not merely by the conduct of third parties acting upon defamatory statements by public officials. *Id.*

### 4. Taking Without Just Compensation

In Count II of their proposed Second Amended Complaint, plaintiffs assert, *inter alia*, that they were deprived of property "without just compensation." This appears to be an attempt to assert a violation of the takings clause of the Fifth Amendment, as applied to the states through the Fourteenth Amendment.[9]

 Even the valid application of the state's regulatory or police powers may constitute a taking of property in the absence of physical invasion or occupation where such action prevents *all* economically productive use of property or drastically diminishes its value. *Lucas v. South Carolina Coastal Council,* —— U.S. ——, ——, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992); *Rogin*, 616 F.2d at 690; *Dean Tarry*, 650 F.Supp. at 1550. No set formula exists for determining "where regulation ends and taking begins." *Goldblatt v. Hempstead*, 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962). Relevant factors include the type of and reasons for governmental interference; the impact on the overall property value; and, the extent of interference with reasonable, distinct, in-

vestment-backed expectations. *Pace Resources*, 808 F.2d at 1030.

 Plaintiffs assert in conclusory fashion that defendants are attempting to diminish the value of their properties. Plaintiffs fail to allege any facts which show that the value of their real property has been destroyed or that all uses to which it might productively be dedicated have been prohibited. They simply allege that defendants have denied them an opportunity to exploit more lucratively a particular use of their property. That regulatory action deprives property of its most beneficial use does not render it unconstitutional. *Rogin, supra; Edelweiss Dev. Corp. v. County of Susquehanna*, 738 F.Supp. 879, 885 (M.D.Pa.1988). The takings clause does not require compensation when an owner is prevented from making the most profitable use of his property or even when regulation results in "substantial devaluations in property value." *Dean Tarry, supra.* See also *Park Avenue Tower Associates v. City of New York*, 746 F.2d 135, 138–39 (2d Cir.1984) (loss of profits or reasonable return on investment do not constitute taking). To the extent that plaintiffs allege that the township defendants hope and plan to acquire their property in the future without just compensation, their takings claim is at best premature.

 Moreover, the essence of a takings claim is not that private property rights have been extinguished but rather that fair compensation has not been tendered therefor.[10] *English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 314, 107 S.Ct. 2378, 2385, 96 L.Ed.2d 250 (1987). There is no violation of the takings clause unless and until a property owner unsuccessfully attempts to secure adequate compensation pursuant to state procedures provided for that purpose. *Williamson Co. Regional Planning v.*

---

**9.** *See Webb's Fab. Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980).

**10.** While the township may elect to establish a competing sewage disposal system even if such undermines the value of plaintiffs' business, *see*

*Knoxville Water Co. v. City of Knoxville*, 200 U.S. 22, 37, 26 S.Ct. 224, 229, 50 L.Ed. 353 (1906); *Laidlaw Waste Systems, Inc. v. City of Phoenix*, 168 Ariz. 563, 567, 815 P.2d 932 (1991), it may not effectively appropriate plaintiffs' business without compensation.

*Hamilton Bank,* 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985).

 Pennsylvania provides appropriate procedures to seek compensation for the taking or injuring of property by formal declaration or by nonappropriative action which substantially deprives an owner of the beneficial use of his property. *See* 26 P.S. §§ 1–201 and 1–502; *Gaughen v. Com. Dept. of Transp.,* 123 Pa.Cmwlth. 550, 554 A.2d 1008 (1989); *Friedman v. City of Philadelphia,* 94 Pa.Cmwlth. 572, 503 A.2d 1110 (1986); *Petition of Borough of Boyertown,* 77 Pa.Cmwlth. 357, 466 A.2d 239 (1983). Upon such occurrence, an owner is entitled to receive the full fair market value of his property based on consideration of the highest and best available use to which the property is adaptable. *Com. Dept. of Transp. v. Becker,* 118 Pa. Cmwlth. 620, 546 A.2d 1282 (1988). This includes compensation for the loss of value of a business license unaffected by any diminution of value caused by the taking of business property associated therewith. *Redevelopment Authority of City of Philadelphia v. Royal Janet Corp.,* 42 Pa. Cmwlth. 546, 401 A.2d 17 (1979). Plaintiffs make no allegation that they have pursued unsuccessfully such procedures.

### 5. Conspiracy

Plaintiffs do not make clear what the basis of their conspiracy claim is. In Count V they merely assert that defendants conspired to deprive them of property, presumably without due process, and of other unspecified rights secured by federal and state law.

 To sustain a federal conspiracy claim under § 1985(3), plaintiffs must allege that the purported conspirators were motivated by a racial or class-based animus. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Pratt v. Thornburgh,* 807 F.2d 355, 356–57 (3d Cir.1986). *See also Dunn,* 681 F.Supp. at 251 (§ 1985 not provide remedy for conspiracy to deny due process rights). Plaintiffs make no such allegation.

 While the existence of a conspiracy otherwise may supply the element of state action and expand the scope of liability through the concept of imputation, § 1983 does not provide a cause of action per se for conspiracy to deprive one of a constitutional right. Without an actual deprivation, there can be no liability under § 1983. *See Kaplan v. Clear Lake City Water Authority,* 794 F.2d 1059, 1065 (5th Cir.1986); *Landrigan v. City of Warwick,* 628 F.2d 736, 742 (1st Cir.1980); *Dean Tarry,* 650 F.Supp. at 1553 n. 15. Plaintiffs fail to allege with requisite specificity the particular objectives and means of the purported conspiracy as they may relate to an actual deprivation of an identified constitutional right. As noted, it appears from their complaint that plaintiffs have as yet not been deprived of property of or an opportunity to seek just compensation for any inverse condemnation they believe has occurred.

### D. *Pendent Claims*

In Count III of their proposed Second Amended Complaint plaintiffs assert a claim for deprivation of property without due process in violation of Article I, Section 10 of the Pennsylvania Constitution. That provision protects persons accused of crime against double jeopardy and limits the Commonwealth's right of eminent domain. Article I, Section 1 embodies the concept of due process. The due process requirements of that provision, however, are virtually co-extensive with those of the Fourteenth Amendment. *See Best v. Zoning Board of Adjustment of the City of Pittsburgh,* 393 Pa. 106, 110–11, 141 A.2d 606 (1958).

In Count IV plaintiffs assert a claim for intentional interference with contracts. They fail, however, to identify an extant contract with a third party the performance of which improperly was interfered with. Plaintiffs do allege that defendants took steps to discourage persons from connecting to plaintiffs' sewage system and they identify several property owners with whom they were "discussing and negotiating" the prospect of such connections. Perhaps counsel meant to assert a claim

for intentional interference with prospective contractual relations.

As noted, in Count V plaintiffs assert a claim for conspiracy in violation of state as well as federal law. The only objective of the alleged conspiracy specified by plaintiffs is the "deprivation of property." They do not make clear what property they have been deprived of or, if the absence of a reference to due process was unintentional, what process of law they have sought to avail themselves of and been denied. Plaintiffs may have a civil conspiracy claim but they have failed to plead it in a cogent, comprehensible manner.

## V. CONCLUSION

The gist of plaintiffs' complaint is that their efforts to expand their business have been rebuffed by defendants pursuant to a statutorily authorized plan of the Township to centralize and assume responsibility for sewage disposal, and consistent therewith defendants discouraged or denied requests by property owners to connect to plaintiffs' system on the ground of lack of capacity. Plaintiffs have failed with requisite specificity to set forth something they are constitutionally entitled to which has been denied them. Their claim of deprivation of property without fair compensation is on its face anticipatory and, in any event, there is no allegation that they have pursued state procedures for obtaining just compensation for deprivation of or injury to property.

Plaintiffs had no reasonable expectation that they could maintain in perpetuity or expand and exploit in the most lucrative manner their sewage facility. Plaintiffs do not challenge the constitutionality of the Pennsylvania Sewage Facilities Act, 35 Pa. C.S.A. § 750.1 *et seq.*, and do not contend that the public policy to which they object is not rationally related to legitimate governmental interests. What they characterize as abusive appears merely to be constitutionally permissible decisionmaking with which they are unhappy and which frustrates their desire to sustain a lucrative enterprise. Their allegations regarding the making of unfounded charges of regulatory violations are ambiguous. They seem to suggest not that no regulatory violation occurred but that because they resulted from defendants' refusal to permit plaintiffs to upgrade their facility, it is inappropriate to cite them for such violations.

It appears, however, that one or more of the defendants may have acted abusively or capriciously in implementing an otherwise permissible policy and in so doing conceivably caused injury to plaintiffs. The court thus will give plaintiffs one last chance to set forth a comprehensible, cognizable federal claim with requisite specificity if such can be done in good faith and consistent with applicable legal principles and precedent. Accordingly, the court will deny as futile plaintiffs' motion for leave to file the second amended complaint submitted and will grant defendants' motions to dismiss without prejudice.