**William LEE and Denver Nursing Home, Inc.**

v.

**Leonard MIHALICH, et al.**

Civ. A. No. 83–2093.

United States District Court, E.D. Pennsylvania.

Feb. 12, 1986.

Gilbert B. Abramson, Philadelphia, Pa., for plaintiffs.

Ellis Saull, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Pending before me in this civil rights action are motions for judgment on the pleadings and partial summary judgment. This suit stems from a 1982 state criminal prosecution of plaintiffs William Lee and Denver Nursing Home, Inc. Plaintiffs claim that the prosecution was groundless, malicious, and in violation of their rights under the federal and state constitutions. Defendants have moved for judgment on the pleadings on plaintiffs' claims involving wrongful prosecution, conspiracy, and right to privacy. In addition, defendants have moved for summary judgment on plaintiffs'. allegations that their sixth amendment rights were violated. For the reasons explained below, I will grant the summary judgment motion, and will grant in part the motion for judgment on the pleadings.

## BACKGROUND

Lee is the owner and operator of Denver Nursing Home. The nursing home participated in Pennsylvania's federally funded Medical Assistance Program, through which it received reimbursement for allowable charges based on services to eligible recipients. In January 1982, the Pennsylvania Attorney General's office brought criminal charges against plaintiffs in Lancaster County Court. These charges concerned the propriety of cost reports filed by the nursing home with the Pennsylvania Department of Public Welfare. The charges were dismissed in December 1982 on the grounds that the action had not been filed within the applicable statute of limitations.

Defendants are all individuals who were involved in the state investigation of the nursing home's activities. They are: Leonard Mihalich and Bradford King, both investigators in the Attorney General's Med-

icaid Fraud Control Unit (MFCU); Robert Gentzel, the Attorney General's assistant press secretary; and Leslie Solove.[1] Solove, the former assistant administrator of the nursing home, cooperated with investigators Mihalich and King, and later testified against plaintiffs.

In about May 1977, Michael Worrall, a Pennsylvania attorney, was retained by plaintiffs to represent them in connection with the MFCU investigation. Worrall also represented Solove, who was an employee of the nursing home at the time. In 1980, Worrall was present at a meeting at which Mihalic took statements from Lee and Solove. Sometime thereafter, Worrall was advised that Lee had retained new counsel for the investigation.

After Solove left the employ of Denver Nursing Home, she asked Worrall to prepare a will for her. He did so, but had no further involvement in the MFCU investigation until 1982. At that time, Solove consulted him about testifying at a preliminary hearing. The hearing took place on February 4, 1982, about a month after the state had filed its charges against plaintiffs. Worrall gave Solove legal advice, and agreed to represent her at the hearing. Worrall's appearance at the hearing came as a surprise to those from the Attorney General's office. Worrall was present as prosecutor Frank Barone prepared Solove for her testimony, but he did not actively participate in that preparation. He then observed her testimony, and left the hearing.

Worrall's only contacts with representatives of the Attorney General's office were greetings exchanged with Mihalich and King. He never discussed his previous representation of plaintiffs with the investigators or with Barone, and after the hearing, he recommended to Solove that she consult another lawyer.

After the charges against plaintiffs were dismissed, assistant press secretary Gentzel told a reporter that the United States Attorney for the Eastern District of Penn-

sylvania had asked for the state's records. As a result of that conversation, a newspaper article was published in Lancaster in January 1983 in which it was reported that the Justice Department was considering filing its own charges against plaintiffs.

## DISCUSSION

Plaintiffs claim that the prosecution was an unfounded conspiracy in violation of their rights under 42 U.S.C. § 1983 and under state law. They also assert that Gentzel's comments to the press resulted in a newspaper article which violated their rights to privacy under the federal and state constitutions. Finally, they allege that the communication between the state actors and Worrall infringed upon their sixth amendment rights to counsel. I will address only the latter two contentions.

### I. *Judgment on the Pleadings*

In ruling on the motion for judgment on the pleadings, I must view the facts in the light most favorable to plaintiffs, the non-moving party. *Society Hill Civic Association v. Harris*, 632 F.2d 1045, 1058 (3d Cir.1980). I must, therefore, accept as true plaintiffs' allegations that the Attorney General's staff instigated the prosecution without probable cause and with malice. I must further accept their claims that the state investigators concealed evidence that would exculpate plaintiffs while relying on information known to be false. And finally, I must regard as true plaintiffs' allegations that Gentzel disclosed to the press information about the federal criminal investigation for the purpose of hiding the state's error in filing its charges.

### A. *Right to Privacy*

The complaint includes claims of invasion of privacy in violation of both federal and Pennsylvania law. I will first discuss the alleged state tort.

---

**1.** Pennsylvania Attorney General LeRoy Zimmerman was originally a named defendant in this case, but plaintiffs have agreed to voluntarily dismiss their claims against him.

### 1. *State Claim*

Pennsylvania recognizes the tort of invasion of privacy, based on section 652D of the Restatement (Second) of Torts (1977). *Vogel v. W.T. Grant Co.*, 458 Pa. 124, 327 A.2d 133, 136 (1974). According to the Restatement definition, the essential elements of the tort are: (1) publicity given to (2) private facts (3) which would be highly offense to a reasonable person and (4) is not of legitimate concern to the public. It is undisputed that the first three factors exist in this case. What is in question is whether Gentzel's disclosure to the press—that a federal criminal investigation of the nursing home was ongoing—is a matter of legitimate public concern.

Plaintiffs maintain that the U.S. Attorney's investigation was not of public concern because grand jury proceedings and pre-indictment investigations are traditionally "enshrouded in secrecy." Plaintiff's Memorandum at 20. It is true that pre-indictment records are often kept secret, while post-indictment records generally are open to the public. But there is no statute prohibiting disclosure to the media. In fact, law enforcement officials do sometimes reveal details about their investigations, on occasion commenting to reporters.

Gentzel's revelation—the truth of which is not questioned—was, therefore, not so extraordinary as to justify this claim. Furthermore, the subject of the investigation—a nursing home allegedly misusing public funds—is surely of legitimate public concern. Since there is a failure to satisfy the fourth prong of the Restatement test, the state law claim of invasion of privacy must fall.

### 2. *Federal Claim*

Plaintiffs also allege that their federal constitutional rights to privacy have been violated. In response, defendants point to *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), in which the Supreme Court found that an individual's interest in his reputation does not implicate a liberty or property interest "sufficient to invoke the procedural guarantees" of the due process clause. *Id.* at 711, 96 S.Ct. at 1165. With admirable ingenuity, plaintiffs attempt to distinguish *Paul* by noting that underlying the decision was the Court's recognition that "Kentucky law does not extend to respondent any legal guarantee of present enjoyment of reputation which has been altered as a result of petitioners' actions." *Id.* at 711–12, 96 S.Ct. at 1165. In contrast, the Pennsylvania constitution explicitly mentions "reputation" as a significant interest: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Cons. art. 1, § 1.

Although plaintiffs are perhaps correct to observe that Pennsylvania accords reputation more protection than does Kentucky, that observation is not controlling here. To the extent that I must look to state law for the basis of plaintiffs' federal claim, I conclude, as discussed in the previous section, that basis to be lacking. Pennsylvania courts would not find a state law tort of invasion of privacy in this situation. Because they would not do so and because the Supreme Court has ruled that harm to reputation does not rise to the level of a constitutional tort, I will grant defendants' motion for judgment on the pleadings as to both privacy claims.[2]

## II. *Summary Judgment*

In ruling on the motion for partial summary judgment, I must resolve all inferences to be drawn from the facts in favor of plaintiffs, the non-moving party. *Continental Insurance Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). And I may grant summary judgment here only if it is established that there is no genuine issue as to

---

**2.** In this memorandum, I have not addressed plaintiffs' claims of malicious prosecution in violation of section 1983 and of state law. I have not done so, because defendants have stated that they will file an additional summary judgment motion dealing with those allegations.

any material fact and that defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Small v. Seldows Stationery,* 617 F.2d 992, 994 (3d Cir.1980).

### A. *Right to Counsel*

█ Plaintiffs allege that defendants infringed upon their sixth amendment rights by obtaining confidential information from Worrall, their former attorney. The facts regarding this claim are undisputed and are recited above. Investigators Mihalich and King as well as Worrall have submitted affidavits saying that they never exchanged information concerning Worrall's representation of Lee and Denver Nursing Home. Furthermore, Worrall has signed a detailed affidavit chronicling his activities in this matter; nowhere in that uncontradicted affidavit does it appear that Worrall ever breached his confidential relationship with plaintiffs.

In order to prevail on this claim arising under section 1983, plaintiffs must show that defendants interfered with their right to counsel and that "the interference was either wrongfully motivated or without adequate justification." *Via v. Cliff,* 470 F.2d 271, 275 (3d Cir.1972). Plaintiffs need not demonstrate that their own attorney's preparedness was adversely affected—that is, prejudice is not a prerequisite to suit—but there must be some interference. *Id.* Here, plaintiffs have presented no evidence even of inadvertent interference, much less of wrongful interference. Plaintiffs merely assert that Worrall's involvement in the case on behalf of Solove was wrongful. While Worrall's representation of Solove at the preliminary hearing may have been unwise or even improper, that is not the issue before me. Even if Worrall should have been disqualified from representing Solove,[3] that fact would not imply that defendants have committed a constitutional wrong.

With no evidence that Worrall ever disclosed confidential information either to

those investigating or to those prosecuting his former clients, there is no factual conflict to be resolved by a jury. There are no discrepancies in the accounts given by defendants and by Worrall, so that summary judgment is appropriate here. Accordingly, I will grant defendants' motion.

---

**3.** There is no evidence that the issue was ever raised either at the preliminary hearing or thereafter.