Brian **PURICELLI**

v.

**BOROUGH OF MORRISVILLE, et al.**

Civ. A. No. 89–9161.

United States District Court,
E.D. Pennsylvania.

April 19, 1993.

William L. Bowe, Philadelphia, PA, for plaintiff.

William F. Thompson, Law Offices of Ralf, Gilbert, Fairless Hills, PA, Donald E. Wieand, Weaver, Mosebach, Piosa, Hixson & Marles, Allentown, PA, Robert G. Hanna, Jr., Marshall, Dennehey, Warner, Coleman and Goggin, Jill Carlin Schrager, Thomas P. Wagner, Rawle & Henderson, Philadelphia, PA, William F. Holsten, II, Patricia Holsten, Holsten & White, Media, PA, for defendants.

## MEMORANDUM

ANITA BRODY, District Judge. .

In these motions for summary judgment on plaintiff's Section 1983 claims for viola-

tions of his civil rights, I am being called upon to decide:

1. Whether, in an action sounding in defamation, the long established precedent that injury to reputation alone is not actionable as a violation of the United States Constitution is abrogated by a provision of the Pennsylvania state constitution identifying reputation as a constitutionally protected interest? I find that it is not.

2. Whether there is any constitutionally protected privacy interest which defendants violated when they investigated plaintiff's criminal background, disclosed information about plaintiff's criminal history and made statements about him to an investigatory grand jury which ultimately disbanded without charging him. I find that there is not.

3. Whether the plaintiff can maintain a cognizable Section 1983 "malicious prosecution/abuse of process" claim against defendants for initiating and conducting a grand jury investigation centered upon plaintiff's possible involvement in an alleged mishandling of abandoned cars when he has not identified any facts establishing any process such as arrest or the filing of criminal charges? I find that he cannot.

### INTRODUCTION

On December 27, 1989, plaintiff, Brian Puricelli ("Puricelli") filed this lawsuit, pursuant to 42 U.S.C. § 1983.[1] This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1343 and 1331.

Currently pending before me are four motions for summary judgment; one filed by each group of defendants.[2] Also pending

before me are some of the same defendants' motions for summary judgment filed in *Garner v. Township of Wrightstown et al.,* Civil Action Number 90–1228. These cases were consolidated for discovery purposes by order of Judge DuBois on August 6, 1990. Although they involve some of the same facts and occurrences I am considering the summary judgment motions separately and issuing a separate opinion in the *Garner* case.

■ The defendants move for summary judgment in accordance with Fed.R.Civ.P. 56(c) which provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I must evaluate the record in a light most favorable to Puricelli as the party opposing the motion for summary judgment. *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir. 1981). The defendants are entitled to summary judgment when no reasonable resolution of the conflicting evidence and the inferences which could be drawn from that evidence could result in a judgment for Puricelli. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.,* 595 F.Supp. 800, 802 (E.D.Pa.1984).

In their motions for summary judgment, the defendants maintain that Puricelli fails to state a cause of action upon which relief can be granted because he has not alleged any

**1.** Puricelli amended his original complaint several times. On May 3, 1991, Judge Van Antwerpen entered an order permitting Puricelli to amend his complaint for a fourth and final time. On May 16, 1991, Puricelli filed his fourth amended complaint. Subsequent references to the "complaint" shall refer to the fourth amended complaint unless otherwise specifically noted.

**2.** There are four basic groups of defendants: (1) Walter H. Hughes, Jr. ("Hughes"), Chief of Police for Wrightstown Township; (2) the "Bucks County" defendants—the Bucks County District Attorney's Office, Alan Rubenstein ("Rubenstein") the District Attorney for Bucks County, Dale Reichley ("Reichley") an assistant district attorney for Bucks County, William Brosha

("Brosha") and Harry Armitage ("Armitage") detectives with the Bucks County District Attorney's Office; (3) the Borough of Morrisville ("Morrisville") and Harry Merker ("Merker") the Chief of Police for Morrisville; and (4) the "Wrightstown defendants"—Wrightstown Township ("Wrightstown"), Ken Cronlund ("Cronlund") and George Donat ("Donat") members of the Wrightstown Board of Supervisors, Yardley Borough ("Yardley"), Susan Taylor ("Taylor") a member of the Yardley Borough Council and Edward Robinson ("Robinson") the Mayor of Yardley. The defendants originally filed motions to dismiss Puricelli's complaint. Judge Van Antwerpen denied these motions.

claims which are cognizable under the Constitution or laws of the United States. Additionally, the defendants maintain that they are immune from suit under the doctrines of absolute or qualified immunity and that any state law claims made by Puricelli are barred by the statute of limitations.

## FACTS

Between 1979 and 1989, Puricelli, worked as a part time police officer for Wrightstown Township and the Boroughs of Yardley and Morrisville. Puricelli alleges that the causes of action arose while he was employed by these police departments.

Puricelli worked as a part time police officer for the Borough of Morrisville ("Morrisville") from 1979 to 1984 when he was discharged.[3] When he applied for employment with Morrisville, Puricelli stated on his employment application that he had been arrested, convicted and had served a term of probation for possessing a controlled substance.[4] Chief Merker ("Merker") of the Morrisville police force investigated and

fleshed out the circumstances surrounding Puricelli's arrest.

In February 1984, after his discharge from the Morrisville police force, Puricelli applied for and received a part time position with the Wrightstown Township ("Wrightstown") police force. (Puricelli Depo. of 7/2/91 at 82–83.) During his tenure with the Wrightstown police force Puricelli and Chief Walter Hughes ("Hughes") became embroiled in several disputes.[5] Despite their differences, Puricelli worked for Wrightstown until September 1988 when he moved to Michigan to begin law school.[6] The Wrightstown police force disbanded on December 31, 1988.

During the last six months of his employment with Wrightstown, Puricelli became the subject of a criminal investigation involving an investigatory grand jury. This investigation, conducted by Dale Reichley, an assistant district attorney for Bucks County and Detectives Brosha and Armitage, also of the Bucks County District Attorney's office, centered upon Puricelli's possible involvement in the alleged mishandling of abandoned cars in the area.[7] The investigation did not result in

---

**3.** The Morrisville police force terminated Puricelli in January of 1984. (Puricelli Depo. of 7/2/91 at 10.)

**4.** On July 19, 1976, Puricelli was arrested in Texas and charged with the possession of marijuana with the intent to deliver. Puricelli was convicted of these charges and received two years of probation. On November 16, 1978, Judge Hannum, of the Eastern District of Pennsylvania, entered an order discharging Puricelli from probation and setting aside his conviction pursuant to 18 U.S.C. § 5021(b). On April 14, 1983, Judge Hannum denied Puricelli's request to expunge his criminal record and ordered that Puricelli's records, maintained by the Federal Bureau of Investigation, be removed from the central criminal file and placed in a separate storage facility. Pursuant to this order, these records may not be opened "unless the Federal Bureau of Investigation determines they are needed in the course of a *bona fide* criminal investigation ... the United States [may] not disseminate these records to anyone ... for any purpose other than as set forth above." Judge Hannum further ordered the F.B.I. to delete Puricelli's criminal record from the computer and the Eastern District of Pennsylvania to seal its records pertaining to Puricelli.

**5.** According to Puricelli, their troubles began when Hughes asked Puricelli to fix a ticket. Puricelli refused and reported this request to Alan Rubenstein ("Rubenstein"), the Bucks County

District Attorney. (Puricelli Depo. of 7/2/91 at 85–87.) Hughes then began cutting Puricelli's work hours. (*Id.* at 89–92.) Eventually, both men contacted the Bucks County District Attorney's office and other law enforcement agencies to lodge complaints about each other. These complaints resulted in an investigation of Puricelli and his involvement in an allegedly unlawful abandoned car scheme but did not result in any investigation of Chief Hughes' supposedly improper conduct.

**6.** Puricelli maintains that he obtained an educational leave of absence from Ken Cronlund, a member of the Wrightstown Board of Supervisors. (Puricelli Depo. of 7/2/91 at 168.) However, on November 30, 1988, Terry Clemons, solicitor for Wrightstown, sent Puricelli a letter which stated that "the Township considers your dropping off your keys at the Township Police Department in August of 1988 and not making yourself available for police duty, is an effective resignation from the Wrightstown Township Police Department."

**7.** In September 1987, Hughes granted Puricelli permission to establish and maintain an abandoned vehicle and towing file for the Wrightstown police force. (Puricelli Affidavit of 8/19/92 at ¶ 4.) In February 1988, a member of the community contacted Hughes about a car that was in the possession of an automobile salvage

the filing of any charges against Puricelli or in his arrest, and the investigatory grand jury disbanded without indicting him. However, during the course of the investigation, Hughes, Reichley, Brosha and Armitage interviewed law enforcement officers and other members of the community about Puricelli and discussed with them Puricelli's criminal record and his status as the subject of a grand jury investigation.[8]

In 1987, Puricelli obtained part time employment with the Borough of Yardley ("Yardley") police force. (Puricelli Depo. of 7/2/91 at 182.) He worked for Yardley until July 1989 when he was suspended because of a complaint filed against him by Susan Taylor, a defendant in this action and then a member of the Yardley Borough Council.[9]

During 1988, Puricelli again sought employment with the Morrisville police force.

---

business owned by Donald Garner, plaintiff in the related case of *Garner v. Township of Wrightstown et al.*, 90-CV-1228. Hughes knew that Garner and Puricelli were friends and that Puricelli helped Garner with the paperwork for his business. (Puricelli Depo. of 10/22/91 at 71; Report prepared by Detective Brosha.) Hughes searched the police files to determine what action the Wrightstown police force took concerning the car in issue. (Brosha Report.) While searching the files, Hughes noticed Puricelli's signature on a large number of abandoned vehicle reports and that Puricelli had not included the usual paperwork as required by the Wrightstown police force's procedures for handling vehicles abandoned within its borders. (Brosha Report.)

8. During the course of his own investigation, Hughes contacted James O'Neill, supervisor for the Yardley police department, Robert Cressman, a member of the Wrightstown police force and Martin Duffy, chief of police for Newtown Township. (*See* Affidavits of O'Neill, Cressman and Duffy.) In particular: (1) Hughes asked O'Neill if he was going to fire Puricelli because of the grand jury's investigation into the abandoned car scheme; (2) Hughes talked about Puricelli at a Wrightstown police force meeting and told Cressman about Puricelli's drug conviction and his involvement in the alleged abandoned car scheme; and (3) Hughes spoke with Duffy about Puricelli's alleged involvement in an illegal method of disposing of abandoned cars. (O'Neill Affidavit at ¶19, Cressman Affidavit at ¶¶ 8, 9(b) and Duffy Affidavit at ¶2.)

During the course of the investigation conducted by the Bucks County District Attorney's office, Reichley, Brosha and Armitage also met with other police officers and community members and told them of Puricelli's criminal record and

---

(Puricelli Depo. of 7/2/91 at 55.) Although he received the top score on the civil service examination, Puricelli failed the psychological examination and consequently did not receive a position with the police force. (Puricelli Depo. of 10/22/91 at 193.)[10]

## DISCUSSION

### I. Section 1983

Puricelli's responses to the motions for summary judgment categorize the numerous allegations made in his complaint into five basic claims brought pursuant to 42 U.S.C. § 1983: (1) harm to his reputation; (2) invasion of his privacy; (3) "malicious prosecution/abuse of process;" (4) deprivation of procedural due process under the Pennsylvania Police Tenure Act and Pennsylvania Borough Code;[11] and (5) conspiracy to deprive

---

the grand jury investigation. In particular, Brosha met with O'Neill, told him that Puricelli should not be a police officer because he was a "convicted drug dealer" and asked to see Puricelli's personnel file. (O'Neill Affidavit at ¶6.) O'Neill refused to let him do so and Brosha returned with a subpoena compelling O'Neill to appear before the grand jury with the personnel file. (*Id.* at ¶¶10, 13.) Also, Reichley and Armitage met with Cressman and told him that Puricelli and Garner were running a chop shop and that Puricelli was a convicted drug smuggler. (Cressman Affidavit at ¶2(d)).

9. Edward Robinson, then the Mayor of Yardley and a defendant in this action, suspended Puricelli and a fellow arresting officer after they arrested and filed criminal charges against Taylor for possession of a controlled substance and driving under the influence of alcohol and a controlled substance. (Puricelli Depo. of 7/2/91 at 204; James O'Neill's Affidavit at ¶26–27.)

10. Puricelli challenged his failure to receive this position at a hearing before the Civil Service Commission, held at his request. (Puricelli Depo. of 10/22/91 at 193, 212.) The Civil Service Commission issued a letter to Puricelli in which it stated that his name was removed from the list of eligible candidates for employment with the Morrisville police force. (Puricelli Depo. of 10/22/91 at 195.)

11. Defendants Merker and Morrisville, in their motions for summary judgment, contend that Puricelli's due process claim based upon his termination by Morrisville in 1984 is barred by the statute of limitations. As set forth below in this memorandum, because I am not now deciding the procedural due process claims, I will not

him of his constitutional rights and to convene a grand jury.[12]

In order to state a viable claim for relief under 42 U.S.C. § 1983 Puricelli must prove (1) "that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States"; and (2) "that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1602, 26 L.Ed.2d 142 (1970). There does not appear to be any dispute between the parties that this "under color of" prong has been met. Rather, the issue is whether Puricelli has shown that the defendants deprived him of any right secured by the Constitution and laws of the United States. Puricelli does dispute that the various defendants are entitled to absolute and qualified immunity defenses.

As stated in the companion case of *Garner v. Township of Wrightstown*, United States District Court for the Eastern District of Pennsylvania 90–CV–1228 at 12:

> Comporting with the directive of *Siegert v. Gilley* [— U.S. ——] 111 S.Ct. 1789 [114 L.Ed.2d 277] (1991), I begin my analysis by determining whether plaintiff has identified any facts on which he can assert a cognizable Section 1983 claim for relief. Although it is conceivable that these same facts might give rise to one or more state law causes of action, these facts do not give rise to any claim that defendants violated any recognized constitutionally protected right. Because the federal constitution is not intended to serve as a font of tort law creating remedies for private citizens against state action in the absence of a violation of a specific constitutional safeguard, see, e.g., *Paul v. Davis*, 424 U.S. 693, 701 [96 S.Ct. 1155, 1160, 47 L.Ed.2d 405] (1975), I must enter summary judgment in favor of defendants and against plaintiff on his Section 1983 claims.

now determine whether the statute of limitations bars this 1984 claim.

**12.** In his complaint, Puricelli asserts an equal *protection claim against* defendant Walter Hughes. Puricelli does not address or in any

This analysis compels the same result in the instant case.

**a.** **The defendants did not injure any constitutionally protected interest in plaintiff's reputation when they disclosed information about his criminal record and made statements about his involvement in activities under investigation by the county grand jury.**

■ My first inquiry regarding Puricelli's harm to his reputation claim is whether the defendants deprived him of any rights secured by the Constitution and laws of the United States when they made false criminal accusations about him and when they disseminated information about his prior criminal record and the grand jury investigation. In his responses to the motions for summary judgment, Puricelli states that the basis of his reputation claim is the United States Supreme Court's decision in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

In *Paul v. Davis*, the plaintiff brought an action under 42 U.S.C. § 1983 after the Louisville, Kentucky police department circulated a flyer to area merchants to alert them to possible shoplifters in the area. This flyer contained the plaintiff's photograph and name. Earlier that year, the police arrested the plaintiff for shoplifting but he never was convicted. This flyer came to the attention of the plaintiff's work supervisor who issued him a warning. The plaintiff maintained that the publication of his name and face in the flyer deprived him of his liberty interest accorded under the Fourteenth Amendment because he would suffer impairment to his future employment prospects and because he feared that other shopkeepers would think he was a shoplifter.

The Supreme Court recognized the stigma imposed upon plaintiff by his inclusion in the flyer and the defamatory nature of the publi-

way substantiate this claim in his response to Hughes' motion for summary judgment. For this reason, I assume that Puricelli chose not to pursue this claim and grant summary judgment in favor of Hughes and against Puricelli.

cation, however, it refused to hold that an individual's reputation interest deserved procedural due process protection under the liberty or property provisions of the Due Process Clause. *Paul,* 424 U.S. at 712, 96 S.Ct. at 1166. Rather, the plaintiff's reputation interest "is simply one of a number which the State may protect against injury by virtue of its tort law...." *Id.* at 712, 96 S.Ct. at 1165. "[P]etitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause." *Id.*

As I stated in *Garner* at 12–16:

Mr. Garner argues that reputation is a fundamental liberty interest shielded by procedural due process protections—an argument that plaintiff predicates on *Paul v. Davis, supra,* which held that the federal constitution does not extend protection to an individual's reputation alone in the absence of other "tangible" injuries or damages. 424 U.S. at 712 [96 S.Ct. at 1166] (reputation alone, no matter how seriously harmed, does not implicate any "liberty" or "property" interests protected by the due process clause); *see also Siegert v. Gilley, supra,* [— U.S. at ——] 111 S.Ct. at 1794.

In an attempt to differentiate the result in *Paul,* which rejected a federal civil rights action for reputation injuries because the highest protection accorded reputation under Kentucky law was a tort action for defamation, Mr. Garner seizes

upon the language of Article I § 1 of the Pennsylvania Constitution to argue that, under Pennsylvania law, injury to reputation alone is a cognizable violation of a liberty interest secured by the federal constitution because "reputation is a fundamental right shielded by due process protections ..." under the Pennsylvania state constitution. (Plaintiff's response to Chief Hughes' motion for summary judgment at p. 8.) [13] This creative argument has been considered and rejected in another decision from this district in *Lee v. Mihalich,* 630 F.Supp. 152, 155 (E.D.Pa.1986).

Numerous decisions from this circuit have held that a cognizable Section 1983 cause of action does not arise where a defendant has defamed the plaintiff and injured his reputation in the absence of other damages. *See, e.g., Kulwicki v. Dawson,* 969 F.2d 1454, 1468 (3rd Cir. 1992); *Clark v. Township of Falls,* 890 F.2d 611, 619–620 (3rd Cir.1989); *Robb v. City of Philadelphia,* 733 F.2d 286, 294 (3rd Cir.1984); *Defeo v. Sill,* 810 F.Supp. 648, 657 (E.D.Pa.1993); *Sergio v. Doe,* 769 F.Supp. 164, 166 (E.D.Pa.1991); *cf. Sturm v. Clark,* 835 F.2d 1009, 1012–13 (3rd Cir. 1987) (there is no protected interest in reputation which would give rise to a Fifth Amendment claim against federal prison officials and injury to plaintiff's reputation would be actionable only under Pennsylvania state defamation law). Just last year, in *Lahaza v. Azeff,* 790 F.Supp. 88, 93 (E.D.Pa.1992), the court rejected the plain-

---

**13.** Article I § 1 provides, in pertinent part, that "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property *and reputation,* and of pursuing their own happiness." (Emphasis added.) Plaintiff argues that I should allow the reputation claim to proceed even in the absence of other damages because Pennsylvania state courts have held that reputation enjoys heightened protections as a fundamental interest under the state constitution. Plaintiff relies on *Hatchard v. Westinghouse Broadcasting Co.,* 516 Pa. 184, 532 A.2d 346 (1987), which held that the Pennsylvania Shield Law was not an absolute shield protecting all of a publication's information from discovery in a defamation claim because of the heightened protections to a plaintiff's reputation, and *Pennsylvania Bar Ass'n v. Common-*

*wealth of Pennsylvania,* [147 Pa.Cmwlth. 351] 607 A.2d 850, 856 (Pa.Commw.1992), which declared a state vehicle code amendment requiring reporting of suspected fraudulent claimants and their attorneys to be unconstitutional because, among other reasons, reputation was a fundamental right "which cannot be deprived without compliance with state constitutional standards of due process and equal protection."
However, as plaintiff acknowledges by his citation to *Bargerstock v. WGCAC,* 397 Pa.Super. 403, 580 A.2d 361 (1990), *appeal denied,* 529 Pa. 655, 604 A.2d 247 (1992) in his brief, the Pennsylvania Superior Court reversed a state trial court's failure to grant defendant's motion for judgment notwithstanding the jury verdict for plaintiff on a Section 1983 claim because the plaintiff failed to prove "reputation plus" damages required by *Paul v. Davis* to maintain a Section 1983 federal civil rights claim.

tiffs' Section 1983 claim for reputation injuries caused by public knowledge of a criminal investigation: "This theory would render virtually every criminal investigation actionable, under § 1983, if the public somehow became aware of it. This is clearly not what was intended by Congress in the drafting of 42 U.S.C. § 1983."

My ruling today should not be interpreted that I foreclose the possibility that the reference to "reputation" in the Pennsylvania state constitution could ever serve as a "liberty" interest invoking the protections of procedural due process. As noted by Gerald Gunther in his discussion of *Vitek v. Jones*, 445 U.S. 480 [100 S.Ct. 1254, 63 L.Ed.2d 552] (1980) [14] in his casebook *Constitutional Law* (12th ed. 1991 at pp. 594–598), an "objective expectation, firmly fixed in state law and [official] practice" could give rise to a liberty interest protected by the Due Process clause. *Vitek* and *Pennsylvania Bar Ass'n v. Commonwealth of Pennsylvania*, [147 Pa.Cmwlth. 351] 607 A.2d 850 (Pa.Commw.1992),[15] the Commonwealth Court decision relied upon by plaintiff, both found a protected liberty interest that precluded stigmatization by ex parte adjudications—the very type of action which troubled the dissent in *Paul v. Davis*.

By contrast, Mr. Garner's claim is nothing more than a state defamation action masquerading as a Section 1983 claim. The facts, when viewed most favorably to him, are simply that untrue statements were made about him. There are no facts to establish that these untrue statements in any way effectuated an official judgment or even a change in his status. It is axiomatic that a judgment or a change of status—the very element lacking in this case—is necessary to invoke due process protections of notice and a hearing *prior* to the judgment or change in status. In the absence of this critical element, the singular fact that these statements were made by local officials does not elevate a defama-

tion claim to constitutional status under federal law for purposes of Section 1983 liability. Moreover, in light of the Superior Court's decision in *Bargerstock v. WGCAC*, [397 Pa.Super. 403] 580 A.2d 361 (Pa.Super.1990) it is apparent that, in the absence of this element, a defamation claim is not elevated to constitutional status under the state constitution for purposes of Section 1983 liability.

In his responses to the motions for summary judgment, Puricelli relies solely upon his assertion that Pennsylvania regards reputation as a fundamental interest for his argument that harm to his reputation alone is a viable claim under § 1983. Puricelli does not address whether he suffered a tangible injury as articulated in the *Paul* decision. "Unless coupled with a tangible injury such as the loss of employment or extinction of a vested right recognized by state law, defamation by state officials is not actionable under § 1983." *Defeo v. Sill*, 810 F.Supp. 648, 656 (E.D.Pa.1993) citing *Paul*, 424 U.S. at 96 S.Ct. at 1160. Because Puricelli has not discussed whether or not he suffered any such tangible injury, I decide whether summary judgment is appropriate for Puricelli's reputation claim only after examining whether reputation alone is a protected interest. Since reputation, alone, does not support a finding that there is a constitutionally recognizable claim for harm to reputation, summary judgment is granted in favor of all the defendants on Puricelli's harm to his reputation claim.

**b. Plaintiff did not have a constitutionally protected privacy interest in information pertaining to his criminal history and to the grand jury investigation.**

The primary issue here is whether Puricelli has a constitutionally protected privacy interest in his criminal history and the grand jury investigation which defendants violated. Puricelli claims that the defendants' violated

---

**14.** In *Vitek*, the Supreme Court held that the involuntary transfer of a prisoner to a mental hospital implicated a liberty interest invoking procedural due process protections. 445 U.S. at 491–97, 100 S.Ct. at 1262–66.

**15.** *See* pages 13–14 of (the *Garner* memorandum) at footnote 3 (reproduced here at footnote 13).

his right to privacy when they revealed to each other, to the grand jury and to other community members that he was the target of a grand jury investigation, claimed that he was running a "chop shop" and stated that he was a drug smuggler and had an arrest record. Additionally, Puricelli maintains that defendants disclosed information contained in his FBI record even though Judge Hannum set aside his conviction and ordered the FBI to remove his criminal record from its criminal files and store it separately and ordered the Clerk's office for the Eastern District of Pennsylvania to seal his record. Because there is no federal law of privacy, Puricelli's invasion of privacy claim must rest, if at all, on the constitutional right to privacy. *Jones/Seymour v. LeFebvre*, 781 F.Supp. 355, 358 (E.D.Pa.1991), *aff'd* 961 F.2d 1567 (3d Cir.1992).

■ The United States Constitution affords some level of protection to an individual's privacy. *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). Generally, the constitutional right to privacy consists of: (1) the right to be free of interference when making particular important decisions; and (2) the "interest in avoiding disclosure of personal matters." *Jones/Seymour*, 781 F.Supp. at 358. The Supreme Court, in the decision of *Whalen v. Roe*, 429 U.S. 589, 598–600, 97 S.Ct. 869, 876–77, 51 L.Ed.2d 64 (1977), held that the constitution includes and protects an individual's interest "in avoiding disclosure of personal matters" and "the interest in independence in making certain kinds of important decisions."[16] *See also Fraternal Order of Police, Lodge No. 5 v. Philadelphia*, 812 F.2d 105, 109 (3d Cir. 1987); *United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 577 (3d Cir.1980) (Employee's medical records contain personal and confidential information which are deserving of privacy protection.) Here, the controversy centers upon whether Puricelli has a protected interest in avoiding the disclosure of personal matters concerning his criminal record and the grand jury investigation.

As I discussed in *Garner* at 17–19, which sheds light on the contentions of Puricelli:

Although Mr. Garner contends that it was a constitutional invasion of his privacy for the defendants to reveal that he was implicated in the investigation, he fails to address the parameters of the constitutionally protected privacy interest and relies, instead, on the elements of a Pennsylvania tort for invasion of privacy. (*See* response to the Bucks County defendants' motion for summary judgment at pp. 8–10 and to the Wrightstown defendants' motion for summary judgment at pp. 5–7.) In *Whalen v. Roe*, 429 U.S. 589, 599–600 [97 S.Ct. 869, 876–77, 51 L.Ed.2d 64] (1977), the United States Supreme Court recognized a constitutionally protected privacy interest in the right to be free from interference in making certain kinds of important personal decisions (the autonomy branch). The *Whalen* Court also recognized a constitutionally protected privacy interest in the right against disclosure of personal matters (the confidentiality branch).

Because Mr. Garner asserts his claim under the confidentiality branch, my first inquiry is whether the type of information disclosed—the fact that Mr. Garner's business operations were implicated in a police and grand jury investigation—is the type of "private" information protected by the constitution. *See Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 206 n. 5 (3rd Cir.1991), *cert. denied*, [—— U.S. ——] 112 S.Ct. 1171 [117 L.Ed.2d 417] (1992). I find that it is not.

The fact that an individual is the subject of a police or grand jury investigation is, by its nature, the type of public information in which a plaintiff does not have a federally protected privacy interest. *See, e.g., Paul v. Davis, supra*, (publication of arrest does not implicate constitutional privacy rights); *Scheetz v. The Morning Call, Inc., supra* (information in a police report is not protected by constitutional right to privacy); *Trade Waste Management Ass'n Inc. v. Hughey*, 780 F.2d 221, 234 (3rd Cir.1985) (disclosure of criminal convictions

---

16. The Pennsylvania Supreme Court also uses this same two-pronged approach to analyze privacy cases which arise under the state's constitution. *F.O.P.*, 812 F.2d at 110.

and pending criminal charges not protected and any expectation of privacy in the conduct underlying the charges has never been "reenforced" by law). *Compare Fraternal Order of Police, Lodge No. 5 v. Philadelphia,* 812 F.2d 105 (3rd Cir.1987) (there is no absolute protection against disclosure of constitutionally protected medical information if government's interest in disclosure outweighs individual's privacy interest); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570 (3rd Cir. 1980) (same).

Here, regardless of whether the investigation was *properly* initiated, it *was* initiated and, thus, any disclosures fell within the ambit of public information in which Mr. Garner did not have a constitutional privacy interest. Indeed, in his briefs, Mr. Garner relies on state tort law as the basis of his claim. Whether or not plaintiff could succeed on a state cause of action for invasion of privacy is irrelevant to this claim for violation of a constitutional privacy right. *Scheetz v. The Morning Call, supra,* 946 F.2d at 206–207 (citing *United States Dept. of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749 [109 S.Ct. 1468, 103 L.Ed.2d 774] (1989)); *Jones/Seymour v. LeFebvre,* 781 F.Supp. 355, 358 (E.D.Pa.1991), *aff'd,* 961 F.2d 1567 (3rd Cir.1992). Because disclosure that an individual is implicated in a police or a grand jury investigation does not violate a constitutionally protected privacy interest, I will enter summary judgment on defendants' motions for summary judgment as to Count I of plaintiff's second amended complaint in so far as it states a Section 1983 claim for tortious invasion of privacy.

■ ■ There is no absolute right to protection against the disclosure of personal matter. *F.O.P.,* 812 F.2d at 110. For example, in *Paul,* the Supreme Court refused to recognize a privacy claim based upon the defendants' publication of plaintiff's arrest because "[n]one of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner." *Id.* at 713. Moreover, this constitutional right to privacy may not be equated with the common law right to privacy recognized under Pennsylvania tort law. *Jones/Seymour*

*v. LeFebvre,* 781 F.Supp. 355, 358 (E.D.Pa. 1991), *aff'd,* 961 F.2d 1567 (3rd Cir.1992).

■ Invasion of privacy occurs when there is publicity given to private material which would be "highly offensive to a reasonable person" and is not matter which is of legitimate concern to the public. *Lee,* 630 F.Supp. at 155. Puricelli's references to state law concerning confidentiality are not relevant to this matter because Pennsylvania confidentiality laws do not control federal constitutional rights. *Scheetz v. The Morning Call,* 946 F.2d 202, 207 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1171, 117 L.Ed.2d 417 (1992).

[7, 8] Puricelli does not have a constitutionally protected privacy interest in information that is a matter of public record. *Paul,* 424 U.S. at 712–13, 96 S.Ct. at 1165–66; *Seymour,* 781 F.Supp. at 358. The Third Circuit, in its *F.O.P.* decision, held that the city of Philadelphia could ask applicants to a special investigatory police unit about the arrest records of their family members because arrests are public. *F.O.P.,* 812 F.2d at 117.

> Arrest records are not exempted from the Freedom of Information Act, and even investigatory records prepared prior to arrests are accorded only limited protection. 5 U.S.C. § 552(b)(7). Under Pennsylvania law, the Criminal History Record Information Act places no limits on disclosure of arrest records to police departments and allows limited disclosure of arrests to any individual making a request. 18 Pa.Cons. Stat.Ann. §§ 9102, 9121(a), 9121(b). *Id.* at 117.

Additionally, the Third Circuit affords no constitutional protection for the privacy of criminal records or for the privacy of pending criminal charges because, by definition, these are public matters. *F.O.P.,* 812 F.2d at 117; *Trade Waste Management Ass'n, Inc. v. Hughey,* 780 F.2d 221, 234 (3d Cir.1985) (records of criminal convictions and pending criminal charges are, by definition, public. There is no federally protected privacy interest that the Attorney General violates when he uses the criminal justice information available from the Federal Bureau of Investiga-

tion to investigate the waste disposal industry. Also, involuntary fingerprinting during the course of a criminal investigation falls outside the protection provided by the Fourth Amendment and does not involve any privacy interest protected by the federal constitution). *See also Scheetz v. The Morning Call,* 946 F.2d 202 (3d Cir.1991).

■ Puricelli maintains that he has a privacy interest in his arrest record because it has been expunged and sealed.[17] This, however, does not warrant my finding that he has a constitutionally protected right of privacy in these records. Even where an arrest record has been expunged, it still remains on court records and in police blotters, and, it never truly is removed from the public record, thus it is not entitled to privacy protection. *F.O.P.,* 812 F.2d at 117 n. 8.

As a matter of law, summary judgment on Puricelli's invasion of privacy claim is proper as to all of the defendants.

**c. Plaintiff can not maintain a Section 1983 claim for "abuse of process/malicious prosecution" against defendants for initiating a grand jury investigation of his involvement in an allegedly unlawful abandoned car scheme because he has not identified any facts establishing any process, such as an arrest or the filing of criminal charges, that deprived him of a constitutionally protected liberty interest without due process of law.**

■ Puricelli asserts an "abuse of process/malicious prosecution" claim against the defendants for convening a grand jury "for the sham purpose of investigating a 'chop shop' operation which Defendant Hughes alleged was being run by the plaintiff." (Puricelli's response to Hughes' motion for summary judgment at 11.)

As I stated in *Garner* at 22–24:

Plaintiff is correct that viable actions for malicious prosecution and malicious abuse

of process can be maintained under Section 1983. *See Losch v. Borough of Parkesburg,* 736 F.2d 903, 907–08 (3rd Cir.1984); *Jennings v. Shuman,* 567 F.2d 1213, 1220 (3rd Cir.1977); *Brown v. Johnston,* 675 F.Supp. 287 (W.D.Pa.1987). "State tort claims do not necessarily constitute a claim under § 1983 but state law torts for false arrest, abuse of process, and malicious prosecution may under some circumstances also provide the basis for a claim under the section." *Mines v. Kahle,* 557 F.Supp. 1030, 1039 n. 5 (W.D.Pa.1983) (The Third Circuit's decision in *Kulwicki v. Dawson,* 969 F.2d 1454 (3rd Cir.1992), disagreed with the *Mines* decision on the issue of absolute immunity.)

One commentator has noted, "[b]y now it is abundantly clear that common law torts committed by local governments or government employees do not, on that basis alone, constitute Fourteenth Amendment violations actionable under § 1983. Thus, strictly speaking, it is incorrect to talk about a malicious prosecution or abuse of process action premised solely on state tort law elements. Rather, what must be identified in every § 1983 case, including these, is the constitutional provision allegedly violated." S. Nahmod, *Civil Rights and Civil Liberties Litigation* § 3.15 (3rd ed. 1991).

Plaintiff has correctly cited *Losch v. Borough of Parkesburg,* 736 F.2d 903 (3rd Cir.1984), as authority that a malicious prosecution claim is actionable under Section 1983. In *Losch,* the district justice dismissed criminal charges filed against plaintiff. The court held (1) that "the filing of criminal charges without probable cause and for reasons of personal animosity is actionable under § 1983" and (2) that the filing of criminal charges to penalize the plaintiff for exercising his First Amendment right to criticize the performance of public officials was a cognizable constitutional deprivation. *Id.* at 907–08.

---

**17.** Although Puricelli states that his criminal record has been expunged, there is no evidence of this in the record. Rather, there is an order issued by Judge Hannum on April 14, 1983 which specifically states:

"The Court, having considered and denied Defendant's motion to expunge the records in the above-entitled cause, . . . ."

In *Jennings v. Shuman*, 567 F.2d 1213, 1218 (3rd Cir.1977), the Third Circuit held that abuse of process was actionable under Section 1983 in the context of a grand jury investigation where the defendants made extortion demands on plaintiff *after* initiating process against him. The court found that plaintiff's constitutionally protected liberty interest was violated by the defendants' conspiracy to arrest him pursuant to a falsely sworn criminal complaint in order to effectuate the extortion: "Such deprivations without [procedural] due process state an injury actionable under section 1983." *Id.* at 1220.

Viewing the facts in a light most favorable to Puricelli, he has failed to state a claim for abuse of process and malicious prosecution. Like Garner and unlike the plaintiffs in *Losch* and *Jennings*, Puricelli was never charged with a crime, indicted or arrested. No process ever issued.

As a matter of law, summary judgment on this claim is appropriate as to all of the defendants.[18]

### d. Procedural Due Process Rights under Pennsylvania Police Tenure Act and Pennsylvania Borough Code.

Puricelli suggests that Wrightstown, Hughes and Yardley violated his right to procedural due process when Wrightstown fired him and Yardley suspended him without any notice or opportunity for a hearing. (*See* Puricelli's response to Wrightstown defendants' motion for summary judgment.) Puricelli must have a constitutionally protected property interest in his employment before he is entitled to receive procedural due process. I must look to state law to determine whether Puricelli has a constitutionally protected property interest in his employment as a police officer. *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

In Pennsylvania, the Police Tenure Act, 53 P.S. § 811 *et seq.*, and the Borough Code, 53 P.S. § 45101 *et seq.*, are the potentially relevant state laws. Both of these statutes provide extensive procedural protections to Puricelli, including the right to demand a public hearing and the right to appeal the results of a public hearing to the Pennsylvania courts. 53 P.S. §§ 814, 815; 53 P.S. § 46191. There is no indication in the record that Puricelli ever availed himself of these procedural protections.

■ Puricelli's procedural due process claims are not "ripe for federal disposition" because he has neither sought relief under the procedures provided by these acts nor claimed that such relief would be ineffective. *Shull v. Borough of Wilson*, 1993 WL 29142 (E.D.Pa.1993). The Third Circuit recently stated that there is a preference for "holding federal civil rights claims in abeyance until state appellate proceedings that may affect the outcome of the federal action are decided." *Linnen v. Armainis*, 991 F.2d 1102 (3d Cir.1993). In the earlier decision of *Bailey v. Ness*, 733 F.2d 279 (3d Cir.1984), the Third Circuit held that it was improper for the district court to dismiss the plaintiff's civil rights claims because plaintiff had an appeal of her underlying criminal conviction pending in Pennsylvania state court at that time. According to the Third Circuit, the proper course of action is to stay the federal cause of action "until the state court proceedings have run their course or have run out of time in which to be brought." *Bailey*, 733 F.2d at 283.

For this reason, I will stay Puricelli's procedural due process claims and will allow him the opportunity to exhaust the procedural remedies set forth in these acts. As set forth in the accompanying order, Puricelli will have ninety (90) days from this ruling to commence any procedural due process claims pursuant to either of these acts. I will rule

---

**18.** Although it does not include a count specifically asserting a conspiracy claim, Puricelli's fourth amended complaint also alleges that the defendants "conspired" to deprive him of his constitutionally protected rights. (*See* fourth amended complaint at ¶¶ 39, 44, 48, 52.) "Section 1983 does not create a cause of action *per se* for conspiracy to deprive one of a constitutional right. Without an actual deprivation, there can be no liability under Section 1983." *Defeo v. Sill*, 810 F.Supp. 648, 658 (E.D.Pa.1993); *see also Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 (10th Cir.1990).

on any procedural due process issues after Puricelli has exhausted these state remedies.

## CONCLUSION

The parties to this lawsuit have personal and complicated disputes with each other and these disputes ultimately caused the parties to suffer injuries. As I have discussed at length, the key issue is whether these injuries rise to the level of a deprivation of due process under the United States Constitution. I hold that they do not. For this reason, I will grant summary judgment in favor of all defendants and against plaintiff on all Section 1983 claims except for the stayed claims alleging procedural due process violations arising under the Pennsylvania Police Tenure Act and the Pennsylvania Borough Code. To the extent that Puricelli pleads any state law claims, I decline to exercise supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(c)(3), and dismiss them without prejudice to his right to re-file in state court. (See 28 U.S.C. § 1367(d), stating that claim should be filed in state court within thirty days). An appropriate order follows.

## ORDER

AND NOW, this 16th day of April, 1993, upon consideration of the defendants' motions for summary judgment and plaintiff's responses thereto and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for summary judgment of defendants Borough of Morrisville and Harry Merker is granted and judgment is entered in favor of defendants and against plaintiff on all Section 1983 claims, except for claims alleging violation of procedural due process arising under the Pennsylvania Police Tenure Act and the Pennsylvania Borough Code.

2. The motion for summary judgment of defendant Walter Hughes is granted and judgment is entered in favor of defendants and against plaintiff on all Section 1983 claims, except for claims alleging violation of procedural due process arising under the Pennsylvania Police Tenure Act and the Pennsylvania Borough Code.

3. The motion for summary judgment of defendants Alan Rubenstein, Dale Reichley, William Brosha, Harry Armitage, and the Bucks County District Attorney's Office is granted and judgment is entered in favor of defendants and against plaintiff on all Section 1983 claims.

4. The motion for summary judgment of defendants Wrightstown Township, Ken Cronlund, George Donat, Yardley Borough, Susan Taylor, and Edward Robinson is granted and judgment is entered in favor of defendants and against plaintiff on all Section 1983 claims, except for claims alleging violation of procedural due process arising under the Pennsylvania Police Tenure Act and the Pennsylvania Borough Code.

5. The plaintiff's claims for violations of procedural due process under the Pennsylvania Police Tenure Act and the Pennsylvania Borough Code against Borough of Morrisville and Harry Merker; Walter Hughes; Wrightstown Township, Ken Cronlund, George Donat, Yardley Borough, Susan Taylor, and Edward Robinson are held in **civil suspense** pending his exhaustion of the procedural remedies as set forth in the Police Tenure Act and the Borough Code. Plaintiff shall have **ninety (90) days** from the issuance of this order to commence his procedural due process claims as set forth in the Pennsylvania Police Tenure Act and the Pennsylvania Borough Code.

6. To the extent that Puricelli pleads any state law claims, pursuant to 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over these state law claims and dismiss them without prejudice to his right to file an action for these claims in state court. [See 28 U.S.C. § 1367(d), that the claim should be filed in the state court within thirty (30) days.]